No. 24,889.

P. G. ABELL and T. P. MURPHY, *Appellees*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant.*

° SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Delay in Shipment of Cattle—Demurrer to Evidence.* It was not error to overrule the demurrer of the defendant to the evidence of the plaintiffs.

2. SAME—*Refusal to Submit Special Question to Jury—No Reversible Error.* It is not reversible error to refuse to submit to a jury a special question where the answer to the question, by itself or in connection with the answers to other questions submitted, could not have been contradictory to the general verdict or could not have compelled a different judgment.

3. SAME—*Answer to Special Question—Supported by Evidence.* It is not error to refuse to set aside an answer to a special question where it is supported by evidence.

4. SAME—*Motion for New Trial Properly Denied.* It was not error to deny the motion of the defendant for a new trial.

Appeal from Clark district court; LITTLETON M. DAY, judge. Opinion filed January 12, 1924. Affirmed.

*William R. Smith, Owen J. Wood, Alfred A. Scott,* all of Topeka, and *William Osmond,* of Great Bend, for the appellant.

*H. R. Daigh,* of Ashland, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiffs recovered judgment against the defendant for damages caused by delay in the shipment of seven carloads of cattle. The defendant appeals.

Answers to special questions were returned by the jury as follows:

"2. Is not ordinary shrink simply a loss of weight due to excretion of dung and urine? A. Yes.

"3. Are not the buyers on the Kansas City market able to make a fairly accurate estimate of the amount of shrink or fill? A. Yes.

"4. Do not the buyers on the Kansas City market take into consideration a shrink and fill in fixing the price for cattle? A. Yes.

"5. In case of shrink do not the buyers on the Kansas City market pay a higher price per pound, based on the amount of shrink? A. Yes.

"6. Do not the buyers on the Kansas City market, in case of fill, pay a lower price per pound, based on the extent of the fill? A. Yes.

"7. How much shrink, if any, do you find occurred on Sunday between 1:30 p. m. and the time the cattle were delivered and unloaded at the Kansas City Stock Yards? A. 8,072 pounds."

1. At the close of the evidence of the plaintiffs, the defendant demurred thereto. That demurrer was overruled, and complaint is made of that ruling. This necessitates an examination of the evidence. The plaintiffs' evidence tended to show that they, as joint owners, shipped seven carloads of cattle from Ashland to Kansas City, Mo., under a thirty-six hour release; that one carload of cattle was unloaded and fed at Emporia within the thirty-six hours; that six carloads were neither unloaded nor fed and were forty-four hours on the way from Ashland to Kansas City; that the weight of the cattle when shipped was 191,570 pounds, and when sold was 174,080 pounds, a difference of 17,490 pounds; that the usual loss on a fat steer shipped without feed or water for thirty-six hours is from 25 to 40 pounds; that the cattle were in the stockyards at Kansas City from 9:30 Sunday evening until the next morning without feed or water; and that they were fed and watered a short time before they were sold. The defendant is responsible for the failure to feed and water the six carloads of cattle within thirty-six hours after being loaded and is responsible for the loss occasioned thereby. It was proper to overrule the demurrer of the defendant to the evidence of the plaintiffs.

2. The defendant complains of the refusal to submit to the jury the following special question requested by the defendant:

"How long would it be in the case of cattle which have been on full feed for a period of more than four months, after they have been fed, before there would be an actual loss of flesh or tissue, as distinguished from loss of weight due to excretions such as dung and urine?"

The question might properly have been submitted to the jury; but the answer to the question, by itself or in connection with the other answers, could not have been contradictory to the general verdict for the reason that, although there was evidence of the defendant which tended to show that there is no loss of tissue in a fat steer until it has been without feed or water for seventy-two hours and that the buyers for the packers in Kansas City take into consideration the fill of cattle in making their purchases, paying a higher price for those that are empty than for those that are full, yet two-thirds of the cattle shipped by the plaintiffs were not sold to packers but were sold to speculators and feeders and the evidence did not tend to show that speculators and feeders take into consideration the full or empty condition of cattle in making their purchases. It was not reversible error to refuse to submit the question.

3. The defendant moved to set aside the answer to the seventh special question submitted to the jury and alleged as a reason therefor that the answer was not supported by evidence. By that answer, the jury found that the cattle shrunk 8,072 pounds between the time they were loaded at Ashland and the time they were unloaded at the stockyards in Kansas City. How the jury calculated the loss in weight does not appear. As has been stated, there was evidence which tended to show that on a shipment of cattle covering a period of thirty-six hours without feed or water there is a loss of 25 to 40 pounds on each animal. Forty pounds each on 170 steers make 6,800 pounds. There was evidence which tended to prove that the entire decrease in weight of the cattle was 17,490 pounds, a difference of 10,690 pounds between the ordinary loss during a thirty-six hour shipment and the loss on the cattle in controversy. The cattle were in the yards without feed or water from the time they were unloaded until the next morning, during which time there would be an additional loss in weight. Under the answer of the jury, 2,618 pounds could have been allowed for the loss in weight during that period of time. It was not error to refuse to set aside the answer to the seventh question.

4. The defendant argues that its motion for a new trial should have been granted for the reason that the jury based its verdict in favor of the plaintiff for $645.72 on conjecture and speculation. This argument is based on the fact that the evidence of the defendant tended to show that fat steers do go seventy-two hours without feed or water before there is any shrink of tissue in the animal and that buyers for the packers take into consideration the amount of feed and water that is in the animal when it is purchased. These matters have been noticed under other heads and need not be again discussed. The verdict of the jury was based on evidence, and it was not error to deny the motion for a new trial.

The judgment is affirmed.